# West Lampeter Township Road.

*Road law—Laying out road—Cities of the third class—Street commissioner—Quarter sessions—Jurisdiction—Bridges.*

1. The court of quarter sessions has no jurisdiction to order the street commissioner of a city of the third class to lay out and open a public road, including the construction of a necessary bridge in accordance with the report of a jury of view. The duties of such an officer are merely ministerial. He cannot, like supervisors, levy taxes, and therefore he is without ability to obey such an order if it were made.

2. In such a case the local act of January 31, 1857, P. L. 9, applicable to Lancaster county provides the proper mode of proceeding.

Argued Nov. 12, 1909.    Appeal, No. 196, Oct. T., 1909, by Ernest Schaeffer, from order of Q. S. Lancaster Co., Jan. T., 1905, No. 514, discharging rule to show cause why an attachment should not issue for contempt In re West Lampeter Township and Lancaster City. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.    Affirmed.

Rule for attachment for contempt.

LANDIS, P. J., filed the following opinion:

On January 16, 1905, a petition was presented, setting forth that the "petitioners labor under great inconvenience for want of a public road or highway to lead from a point in a public road near the Old Factory bridge, known as the Old Factory Road, to a point in East Hager street, at or near the Garbage Plant." The court thereupon appointed viewers, and on April 19, 1905, these viewers filed their report in favor of the road. This report was confirmed nisi, and the width of the road was fixed at thirty-three feet. On December 18, 1906, the report was confirmed absolutely, and thereupon an appeal was taken to the Superior Court. On February 28, 1908, that court affirmed the judgment of the court below. See Lampeter Twp. Road, 35 Pa. Superior Ct. 379. Thereupon orders were issued to the supervisors of West Lampeter township and to the street commissioner of the city of Lancaster, to open the said road, and it is admitted in the petition for this attachment that that part of the road lying in West Lampeter township has been duly opened by the supervisors; and the answer filed by the street commissioner, which is not contradicted, asserts that the order of the court has also been complied with in the city of Lancaster, in that said road is opened to the width set forth in the report of the viewers and the order of the court, with the exception

that the petitioner himself has erected on the road in his pasture a fence across, obstructing and preventing passage thereon by vehicles and pedestrians.

The point of controversy, however, seems to arise from the fact that it is asserted in the petition that the Conestoga creek, at the point at which the road was laid out by the viewers, is impassable without a bridge, and that no bridge has been erected or constructed by the street commissioner. It is not claimed that the order specifically directs the street commissioner to build a bridge, and in point of fact we do not see how he could do so, even if he had been so directed. Supervisors of townships have authority to levy taxes, and, therefore, they can, whenever it is required, erect necessary bridges; but the street commissioner's duties do not embrace any such authority. On pp. 90, etc., of the City Digest, his duties are defined by the city ordinances, and he is directed to keep open and in good order and repair the streets, lanes, alleys and highways of the city, and to superintend the digging down and filling up the same, according to the pitch and regulation of the street regulators, and to direct and appoint the depth of all wells, sinks or vaults for privies, hereafter to be dug in the city. He is also authorized and required, as often as the several streets, lanes and alleys shall be out of repair, or want cleaning, to hire and employ a sufficient number of laborers, and the necessary carts or wagons, to work upon, amend, repair and cleanse the same. He is also directed to take care of the public property and all materials intended for improvement, and to see that all nuisances whatsoever be properly removed, and generally exercise a superintendence and care over the cleanliness of the city. He is not authorized to make contracts of any considerable amount, authority of that character being vested in the street committee and councils. In fact, his duties are ministerial. How, then, could he build a bridge over the creek in response to our order; and, if he, by reason of inability, has failed to do so, should we, notwithstand-

ing his lack of power to perform such a work, issue an attachment against him? Attachments are issued to compel persons to do that which they can do but will not; but, in a case of this character, it would be an attachment issuing against the street commissioner compelling him to do something which he cannot do.

We are of opinion that, in the first place, the order issued by the court does not compel the street commissioner to build a bridge, and, in the second, that such an order, in any event, could be considered as one improvidently granted.

The Act of January 31, 1857, P. L. 9, sec. 1, enacts: "That hereafter, upon the final confirmation by the Court of General Quarter Sessions of the Peace of Lancaster County of a report of viewers, reviewers or rereviewers, under an order of the said Court, laying out any street, lane or alley within the limits of the city of Lancaster, in said county, no order shall issue from the said Court for the opening of such street, lane or alley; but it shall be the duty of the clerk of the said Court to certify, under his official seal, the fact of such confirmation, with the width decreed in the premises, to the Select and Common Councils of the said city, for which service he shall be entitled to the like fees, and from the same source, heretofore allowed for orders to open from the Court. And whenever afterwards, the said Councils shall deem expedient, it shall be lawful for them, by joint resolution, to direct their Street Commissioner to open the premises described in such certificate, in the same manner and form as in similar cases he was heretofore required to do by the said Court, and according to the width which the said Court may decree." Section 2 provides: "That so much of any law heretofore passed, as vests in the Court of General Quarter Sessions of the Peace of Lancaster County the right to direct the opening of any street, lane or alley laid out in the city of Lancaster, is hereby repealed." The words "street, lane or alley," as used in this act, include, we think, a road of

this character, and, therefore, the act of assembly applies to it with full force. In re East Grant Street, 121 Pa. 596, it is decided that streets and alleys in Lancaster city, not upon the city plan, are to be laid out and opened under the general road laws of the commonwealth, as modified by the special Acts of April 13, 1854, P. L. 352; January 31, 1857, P. L. 9, and April 28, 1857, P. L. 338.

We have concluded that no attachment ought to issue in this case, and, therefore, the rule is discharged.

Rule discharged.

*Error assigned* was order discharging the rule.

*William H. Keller*, with him *H. M. Houser*, for appellant.—Where a public road is laid out across a nonfordable street, building a bridge over the stream is a necessary part of laying out the road: Com. v. Johnson, 134 Pa. 635.

The "streets, lanes and alleys" referred to in the local act of January 31, 1857, do not include a public road located partly within the limits of the city of Lancaster and partly in an adjoining township.

The question was squarely raised in Somerset & Stoystown Road, 74 Pa. 61, and the Supreme Court held that by "streets and alleys therein," under sec. 1 of the act of April 22, 1856, is meant such as begin and end in a borough and within its limits, not public roads.

If the act of 1857 is not applicable to this road, the order to open was properly issued to the street commissioner: Bachler's App., 90 Pa. 207.

*Isidor Rosenthal*, with him *L. R. Geisenberger*, city solicitor, for appellee.—The local act of January 31, 1857, in which the following words are used: "The laying out any street, lane or alley within the limits of the City of Lancaster in said County" are sufficient to divest the court of quarter sessions of any power to open a street, road, lane or highway in the city, no matter whether one

of the termini begins in a point in an adjoining township and ends in a point in the city of Lancaster, or whether it is wholly within the city of Lancaster: West Liberty and Knoxville Roads, 20 Pa. Superior Ct. 586; Osage Street, 90 Pa. 114.

OPINION BY RICE, P. J., July 20, 1910:

The facts of this case are clearly stated in the opinion of the learned judge of the quarter sessions and need not be restated. It is important, however, that the exact terms of the order which it is alleged the street commissioner of the city of Lancaster disobeyed should be brought clearly into view. It directs him "to forthwith lay out and open for public use, of the width of thirty-three feet, said road, by removing all stumps, trees or other obstructions and in accordance with the courses and distances as given in the draft annexed, and the copy of said report of viewers, and according to law." Taking for verity, as we must on this appeal, the undenied averments of his answer to the rule to show cause why an attachment should not issue against him for contempt, the street commissioner obeyed the specific directions of the order. But it is alleged that he is in contempt in not building a bridge across Conestoga creek, a nonfordable stream, at the point where the road as laid out by the quarter sessions crosses. It is argued that the expense of making and maintaining bridges ordinarily falls upon those municipalities which are charged with the making and maintaining of highways of which bridges are a part. But while this is the general rule, it does not meet the precise question presented here, namely, the power of the court of quarter sessions to compel a street commissioner of the city of Lancaster to build bridges. Speaking of this subject, the learned judge points out the distinction between the powers of supervisors and the powers of the street commissioner, and says that the former have authority to levy taxes and therefore they can, whenever it is required, erect necessary bridges, but the street commissioner's duties do not embrace any such authority. He then points out what those duties are and shows quite clearly that he is not authorized to make contracts of any

considerable amount, authority of that character being vested in the councils. His duties appear to be ministerial and it is difficult to see how, if the court had specifically directed him to build the bridge in question, he could have obeyed the order. It is reasonable to interpret the order as not including so extraordinary a matter as the building of an expensive bridge across a nonfordable stream. We agree with the learned judge's conclusion that the order issued by the court does not compel him to build a bridge and that such an order in any event could be considered as one improvidently granted. In view of the foregoing conclusion, it seems unnecessary to discuss at length the act of 1857; but we are not prepared to adopt the view of appellant's counsel with regard to the construction of that act. It is part of a system of laws relating to the city of Lancaster, presumably adapted to local conditions (In re East Grant Street, 121 Pa. 596), and the principle upon which the case of Somerset and Stoystown Road, 74 Pa. 61, was decided does not in our judgment necessarily require a construction of the act, which would make it inapplicable to the present case. The case is so well considered in the opinion of the learned judge of the quarter sessions that we deem it unnecessary to add anything further in support of the conclusion that the attachment for contempt should not issue.

The order is affirmed.